IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                              3:03CR150/RV
                                                 3:06CV226/RV/MD

BRADFORD SAMUEL POTTS

**REPORT AND RECOMMENDATION**

This matter is before the court upon defendant's second amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255  (doc. 126).  The government has filed a response (doc. 133) and the defendant has filed a reply  (doc. 144).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**I. BACKGROUND**

Defendant Bradford Potts along with Shelton Perdue and Marline D. Purifoy were charged in a single count indictment with conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectible amount of cocaine in violation of 21 U.S.C. § 841(a)(1) and fifty grams or more of a mixture and substance containing cocaine base in violation of 21 U.S.C. § 841(b)(1)(A)(ii) and (iii). (Doc. 13).  The government filed a notice of enhancement indicating its intent to seek increased penalties against defendant Potts due to his two prior controlled substance offenses.  (Doc. 27).  Co-

defendant Marlin Purifoy entered into a plea and cooperation agreement (doc. 46) and the remaining two defendants proceeded to trial. Potts was represented by appointed counsel George F. Murphy. Both defendants were found guilty as charged, and were found to be accountable for both five kilograms or more of cocaine powder and 50 grams or more of cocaine base. (Doc. 56 & 57).

Using the marijuana equivalency, the PSR attributed 1,762.77 kilograms of marijuana to the defendant, for a base offense level of 32. However, his total offense level was 37 pursuant to § 4B1.1 of the Sentencing Guidelines due to his career offender status. He had a criminal history category of VI. Defendant was sentenced to a term of 360 months imprisonment, which was the low end of the applicable guidelines range, because the two offenses which subjected him to career offender status were relatively minor offenses. (Doc. 86 at 19).

Potts and Perdue appealed, arguing that there was insufficient evidence to convict them of conspiracy, that the district court erred by allowing testimony about drug transactions that occurred before the alleged conspiracy, and that the district court committed error under *Blakely/Booker* at sentencing. Their convictions and sentences were upheld. (Doc. 118).

In the present motion, defendant contends that there was insufficient evidence to prove the existence of a conspiracy or his participation therein, that the government improperly introduced evidence of uncharged conduct, that counsel's performance was constitutionally ineffective because he failed to object to the quantity of drugs attributed to the defendant, failed to raise certain issues on appeal, and deprived defendant of his right to testify in his own behalf. The government opposes the motion in its entirety.

## II. LEGAL ANALYSIS

### A. General Legal Standards

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the

Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *Ferguson v. United States,* 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003). (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at

687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail

. . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

B. <u>Defendant's Specific Claims</u>

    1. <u>Insufficient Evidence of Conspiracy</u>

Defendant first claims that there was insufficient evidence of a conspiracy. He repeatedly avers that there was insufficient evidence to prove that an agreement existed among the conspirators and that his mere association with co-defendant Perdue was not tantamount to proof of illegal activity.

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981); *Hidalgo v. United States*, 138 Fed.Appx. 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects"). The sufficiency of the evidence was challenged on direct appeal by both defendants Potts and Perdue, and the appellate court found the evidence against the defendants was sufficient to uphold their convictions (Doc. 118 at 2).

### 2. Variance to the Indictment

Defendant next contends that the government presented evidence of "uncharged offenses" at trial, thus resulting in a fatal variance to the indictment. The evidence in question concerned testimony about a controlled buy that took place and a search warrant that was executed at defendant's home in Copperas Cove, Texas in August of 2003.[1] Officers Earl Edward Wilson of the Copperas Cove Police Department, and Jose G. Ramos of the Texas Department of Public Safety, testified about these events. (Doc.84 at 235-270). Defendant claims that he was prejudiced because counsel failed to inform him that these two officers would be testifying, and that had he known that the evidence complained of was going to be presented to the jury, he would have testified to his version of events, that is that the Texas case was dismissed.

"The standard of review for an allegation of variance between the indictment and the proof adduced at trial requires two steps: 'First, we must determine whether a material variance did indeed occur; and, second, whether [the appellant] suffered substantial prejudice as a result of the variance.'" *United States v. Starrett*, 55 F.3d 1525, 1552-53 (11th Cir. 1995) (citing *United States v. Prince*, 883 F.2d 953, 959 (11th Cir. 1989); see also *United States v. Reed*, 980 F.2d 1568, 1581 (11th Cir.), cert. denied, 509 U.S. 932, 113 S.Ct. 3063, 125 L.Ed.2d 745 (1993); *United States v. Church*, 955 F.2d 688, 697 (11th Cir,. 1992)). A failure of proof on either prong is sufficient to defeat defendant's claim. *Starrett*, 55 F.3d at 1553. To establish prejudice, the second prong, the defendant must show either (1) that "the proof at trial differ[s] so greatly from the charges in the indictment that the defendant was unfairly surprised and had an inadequate opportunity to prepare a defense," or (2) that due to the number of defendants in the case, and the number of predicate acts charged, there is a substantial likelihood that the jury transferred evidence from one defendant to another." *Id.* (*quoting United States v. Caporale*, 806 F.2d 1487, 1500 (11th Cir. 1986), cert. denied, 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987)). Any variance in this case between the indictment and the proof at trial is not so great as

---

[1] **The indictment charged that the conspiracy occurred between June 1, 2003 and the date of the indictment, which was December 16, 2003.**

to support a claim of unfair surprise, as prior to trial the government provided notice to the defendant of its intent to introduce the defendant's drug trafficking activities in Texas. (Doc. 49 at 2 (government's trial brief)).

Although defendant does not specifically articulate such a challenge, it also appears that the evidence was properly admitted under Rule 404(b). Co-defendant Perdue raised a claim regarding improper admission of evidence on appeal. In considering this claim the Eleventh Circuit stated:

> Evidence of uncharged criminal activities generally would be considered inadmissible extrinsic evidence under Rule 404(b). *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000). Such evidence, however, is admissible as intrinsic evidence of the charged offense if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (citation omitted). "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. *Id.* (internal quotations and citation omitted).

Although defendant contends that the Texas charges in question were dismissed, the search occurred during the time frame of the conspiracy and involved the same controlled substance as that involved in the charged conspiracy. The government noted before trial that although defendant Potts was not a "big time" dealer, but more of a "want to be," the evidence about the activities in Texas showed that he was trying to sell drugs and develop a market. (Doc. 83 at 13-14). It would also tend to show that the expected defense, that Potts was surprised to learn that Perdue was involved in selling drugs while the men were in Pensacola was not credible. (Doc. 83 at 14). The government further explained that its theory of the case was that the cocaine and crack cocaine involved in the conspiracy was flowing from Texas to Pensacola. (Doc. 83 at 14-15). The court stated that there was no basis for a 404(b) objection to the evidence (doc. 83 at 16), but left the door open for counsel to make appropriate objections, if any, at a later time. Thus, there is no basis for

defendant's claim that the evidence was improperly admitted, or that counsel's performance was constitutionally ineffective due to his failure to object to the admission of this evidence.

Finally, defendant's claim that "had he known" the Texas law enforcement officers would testify, he would have testified, is not credible. At the time he made his decision whether to testify, see *infra*, evidence about the events in Texas had already been presented during the government's case in chief.

### 3. Counsel Deprived Defendant of his Right to Testify

Although not raising a specific and separate ground for relief, defendant alludes in his motion to discussions he had with counsel about whether he should testify. He states that counsel advised him not to take the stand because "the government will bring in the arrest that occurred in Texas even though the case is pending" and that defendant had "a better chance of winning the case because there is no evidence against you, so my advice is, that the jury won't hear about what took place in Texas." The basis for defendant's argument is unclear, as by the time he had to make his decision whether to testify, the government's case in chief had already been presented, and the evidence about "what took place in Texas" had been heard by the jury.

It is axiomatic that a criminal defendant has the right to testify in his or her own defense. *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987); *McGriff v. Dept. of Corrections,* 338 F.3d 1231, 1237 (11th Cir. 2003); *Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999); *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992). This right is fundamental and personal to the defendant, such that it may not be effectively waived by counsel against the defendant's will. *Gallego,* 174 F.3d at 1197; *Teague*, 953 F.2d at 1532; *Sexton v. French,* 163 F.3d 874, 885 (4th Cir. 1998); cf. *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000) (finding that a strong-willed defendant who changed his mind about testifying likely did so as a result of persuasion rather than coercion); *Emery v. Johnson*, 139 F.3d 191, 199 (5th Cir.1997) (same). When "[u]naccompanied by coercion, legal advice concerning exercise of the right to testify

infringes no right ... but simply discharges defense counsel's ethical responsibility to the accused." *Lema v. United States,* 987 F.2d 48, 52 (1st Cir. 1993). An overwhelming majority of the circuits have held that a district court generally has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived the right voluntarily. See *United States v. Van de Walker*, 141 F.3d 1451 (11th Cir. 1998); *United States v. Leggett,* 162 F.3d 237, 246 (3rd Cir. 1998)(citing cases from nine courts of appeals); *United States v. Richardson*, 195 F.3d 192, 197-198 (4th Cir. 1999). Some courts have held that a waiver may be inferred from the defendant's conduct if she or he does not alert the trial court of a disagreement with counsel as to whether he should testify.[2] *Gonzalez v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000); *United States v. Webber,* 208 F.3d 545, 552 (6th Cir. 2000); *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993); *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir.), cert. denied, 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990); *United States v. Kamerud*, 326 F.3d 1008, 1017 (8th Cir. 2003) ("if an accused desires to exercise [his] constitutional right to testify the accused must act affirmatively and express to the court [his] desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred.") (citation omitted).

The appropriate vehicle for a claim that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under *Strickland*. *Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999); *Teague,* 953 F.2d at 1534; *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000). In this case, however, to the extent that the defendant's motion can be read to claim a violation of his right to testify, the record does not support such a claim. At trial, the district court specifically addressed the defendants' right to testify, explaining that the right was personal to each of them, not to

---

[2] "[I]n exceptional, narrowly defined circumstances, judicial interjection through a direct colloquy with the defendant may be required to ensure that the defendant's right to testify is protected." *United States v. Pennycooke*, 65 F.3d 9, 12 (3rd Cir. 1995). The *Pennycooke* court's illustration of an "exceptional circumstance" was a defendant who repeatedly interrupted the trial to express his desire to testify and interjected that his attorney was lying when his attorney told the court that the attorney and the defendant had made a joint decision that the defendant would not testify. *Id.* at 12 (citing *Ortega v. O'Leary*, 843 F.2d 258 (7th Cir.1988)).

their attorneys, asking each of them individually after the government rested about whether they wished to exercise that right. (Doc. 85 at 68-70). Defendant indicated that he had discussed his right to testify with counsel, he understood the right and it was his decision not to testify. (Doc. 85 at 70). Therefore, he cannot be heard to claim in the instant motion that counsel interfered with this right.

### 4. Failure to Investigate

Also interspersed within the defendant's memorandum are allegations that counsel failed to investigate, failed to thoroughly review documentary evidence, failed to file "all necessary motions in the pre-trial stages" including motions relating to his arrest and surrounding circumstances, and failed to subpoena a particular witness.

The testimony that could have been given by the witness in question, defendant's son's elementary school teacher, would not have been helpful to the defendant. According to defendant, this witness could have testified that the defendant picked his son up from school from January through May of 2003. However, the testimony at trial was that the first time the defendant came with Perdue to Pensacola was around June of 2003, when Robinson, Perdue and defendant Potts rode around smoking marijuana after which Robinson took Potts and Perdue to sell cocaine to Robinson's cousin. Therefore, the testimony would not have provided the "alibi" defendant suggests.

With respect to his other allegations, all of them are vague and conclusory, and thus insufficient to pass muster under the *Strickland* test. See *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge,* 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

### 5. Failure to object to Quantity of Drugs Attributed to Defendant

Defendant maintains that counsel was constitutionally ineffective when he failed to object to the drug amount attributed to his client. Defendant claims that he should have been held accountable for only those portions of the conspiracy that were reasonably

foreseeable to him. As noted above, using the marijuana equivalency, the PSR attributed 1,762.77 kilograms of marijuana to the defendant, for a base offense level of 32. However, the quantity of drugs attributed to him ultimately had no bearing on his total offense level. Because the instant offense was a felony drug offense, and because the defendant had at least two prior felony convictions for a crime of violence of a controlled substance offense, and because the statutory maximum for the charged offense conduct was life, his offense level was 37 pursuant to § 4B1.1 of the Sentencing Guidelines, without respect to the quantity of drugs calculated by the probation officer. (PSR¶56). Therefore, counsel's failure to interpose any specific objections to the quantity of drugs attributed to him was not constitutionally ineffective.[3]

### 6. Failure to raise *Booker/Blakely* on Appeal

Finally he maintains that counsel was constitutionally ineffective because he failed to raise *Blakely*[4] and *Booker*[5] on direct appeal. In the seminal case of *Apprendi v. New Jersey*,[6] the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63. *See also Ring v. Arizona*, 536 U.S. 584, 589, 122 S.Ct. 2428, 2432, 153 L.Ed.2d 556 (2002) (concluding under *Apprendi* that "[c]apital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."). Since *Apprendi* was decided, the Supreme Court has decided

---

[3] **The government also notes that even if only the amount of cocaine base actually seized were considered, it was in excess of the 50 gram quantity required to trigger the penalties set forth in Title 21 U.S.C. § 841(b)(1)(A).**

[4] ***Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).**

[5] ***United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).**

[6] ***Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000).**

the two other landmark cases upon which defendant relies, *Blakely v. Washington*, and *United States v. Booker.*

> As clarified in *Blakely*:
>
> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. See Ring, supra*, 536 U.S. at 602, 122 S.Ct. at 2428 ("'the maximum he would receive if punished according to the facts reflected in the jury verdict alone'" (*quoting Apprendi, supra*, 503 U.S. at 483, 120 S.Ct. at 2348)) . . . . In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

124 S.Ct. at 2537-38 (emphasis in original, some citations omitted); *see also In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) (quoting *Blakely*).

In *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court extended its holding in *Blakely* to the Sentencing Guidelines, holding that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. It excised two parts of the Sentencing Reform Act to cure the constitutional defects: 18 U.S.C. § 3553(b)(1), which made the guidelines result binding on the sentencing court and § 3742(e), which required *de novo* review of sentences on appeal. *Id.* at 764. Thus, after *Booker,* which was decided during the pendency of the defendants' direct appeal, the sentencing guidelines are advisory in nature.

Although counsel for Potts did not raise the issue, a *Blakely* claim was brought by co-defendant Perdue. The Eleventh Circuit noted that because counsel for the defendant did not raise a constitutional objection to the district court's application of the sentencing guidelines, review was under the plain error standard. (Doc. 118 at 11, citing *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005)). The appellate court considered the *Blakely/Booker* issue and found the claim to be without merit because the defendant had failed to show that the district court's error, in sentencing under a mandatory rather than advisory guidelines scheme, had affected the sentence ultimately imposed. (Doc. 118 at

10-15).[7]  The government argues that defendant Potts has failed to show that had his attorney raised the same issue raised by defendant Perdue, the outcome of his appeal would have been any different, and hence he has not shown prejudice and is not entitled to relief.

The situations of the two defendants, however, is not identical, and hence defendant's claim warrants additional discussion.  Mr. Potts' sentence was based not on the twenty year statutory minimum mandatory, which had no effect on him for the purposes of sentencing (doc. 86 at 16), but on his guidelines range after having received the guidelines label of career offender.  The court noted three times at sentencing that the two offenses that constituted predicate offenses for defendant's career offender status were "relatively minor," and reiterated that it was in light of this fact that it intended to sentence the defendant at the low end of the applicable guidelines range.  (Doc. 86 at 16, 18 & 19).  In addressing the defendant directly, the court did not specifically state that it would have sentenced defendant differently but for the then-mandatory nature of the guidelines range, but it did say that "obviously under these circumstances my sentencing options are pretty restricted."  (Doc. 86 at 18).

Had counsel raised this issue on appeal, the plain error standard would have applied.  An appellate court may not correct an error the defendant failed to raise in the district court unless there is: "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (citing *United States v. Cotton*, 535 U.S. 625, 631, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002)).  "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*  Plain error review is to be exercised "sparingly" and only "in those circumstances in which a miscarriage of justice would otherwise result." *Id*. (citing *Jones v. United States*, 527 U.S. 373, 389, 119 S.Ct. 2090, 2102, 144 L.Ed.2d 370

---

[7] **Mr. Perdue, the court will recall, was subject to a statutory minimum mandatory of 240 months, and was sentenced to a term of 267 months imprisonment although he was held accountable for a far greater quantity of drugs than was Mr. Potts.**

*Case No: 3:03cr150/RV; 3:06cv226/RV/MD*

(1999), *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993)).

In *Rodriguez,* the *Booker* error arose from the district court's enhancement of defendant's sentence based on the judge's drug quantity findings which increased the defendant's base offense level, guidelines range and sentence under a mandatory guidelines system. 398 F.3d at 1298. In this case, the error arose from the sentence enhancement based on defendant's status as a career offender under the guidelines in accordance with a mandatory guidelines system. The second prong of the plain error test was also met in *Rodriguez,* and in the case at bar. Even if the error was not "plain" at the time of sentencing because *Booker* had not yet been decided, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal-it is enough that the error be 'plain' at the time of appellate consideration." *Id*, 398 F.3d at 1299 (citing *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997)).

However, even if the first two prongs of the plain error test are met, as in *Rodriguez*, the third prong is not met. The third prong of the plain error test requires that an error have "affect[ed] substantial rights," which almost always requires that the error "'must have affected the outcome of the district court proceedings.'" *Id.,* 398 F.3d at 1299 (citing *Cotton*, 535 U.S. at 632, 122 S.Ct. at 1786 (quoting *Olano*, 507 U.S. at 734, 113 S.Ct. at 1778)). There must be a reasonable probability of a different result, that is a probability "'sufficient to undermine confidence in the outcome.'" *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984))). With respect to this third prong, it is the defendant rather than the government who bears the burden of showing prejudice, and this burden is "anything but easy." *Id.* (quoting *Olano*, 507 U.S. at 734, 113 S.Ct. at 1778).

The *Rodriguez* court noted that if it were to vacate the sentence and remand for resentencing in light of *Booker*, "the district court would be faced with exactly the same evidence presenting exactly the same factual issues that it has already resolved, and it would be required to at least consider exactly the same guideline enhancement provisions

it has already applied." *Id.* at 1300-1301. The constitutional error is not the use of extra-verdict enhancements to reach a guidelines result, but the mandatory nature of the guidelines once this range is established. *Id.* at 1301. So long as the guidelines are applied in an advisory manner, there is no constitutional error in using additional factual findings to fashion a sentence. *United States v. Smith*, 480 F.3d 1277 (11th Cir. 2007). Thus, the important question is whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of a binding fashion. *Rodriguez,* 398 F.3d at 1301. As in *Rodriguez*, there is nothing in the record in this case to conclusively indicate that the district court might have given a shorter sentence, rather than the same sentence, if the guidelines were applied as advisory with respect to defendant Potts' sentence. "The record provides no reason to believe any result is more likely than the other." *Id.* In light of the court's comments about the "relatively minor" nature of the offenses that led to the career offender status and the seemingly disparate sentence, a reasonable person might speculate that had the court had the benefit of *Booker*, it might have sentenced the defendant differently. However, because the result is uncertain or indeterminate, and this court would have to speculate, the defendant has not met his burden of showing a reasonable probability that the result would have been different but for the error, he has not met his burden of showing prejudice, and he has not met his burden of showing that his substantial rights were affected. *Id.* (citing *Jones v. United States*, 527 U.S. 373, 394-395, 119 S.Ct. 2090, 2105, 144 L.Ed.2d 370 (1999)). Such a finding on the third prong makes further analysis unnecessary. And therefore, defendant has not met his burden of showing that counsel was constitutionally ineffective for his failure to raise *Blakely/Booker* error on appeal.

Finally, to the extent defendant faults counsel's failure to anticipate the *Booker* decision, it is well established that counsel is not constitutionally required to predict a change in the law to provide effective assistance of counsel. *See United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (citing *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997); *Pitts v. Cook*, 923 F.2d 1568, 1572-74 (11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8

(11th Cir. 1986)).  This is true even when the change is such that the forfeited issues was, in hindsight, a sure winner.  *Id.* (Citing *Wright v. Hopper*, 169 F.3d 695, 707-708 (11th Cir. 1999) (*Batson* issue); *Elledge v. Dugger*, 823 F.2d 1439, 1443 (11th Cir. 1987) (*Michigan v. Mosley* issue); *Thompson v. Wainwright*, 787 F.2d at 1459 n. 8 (*Ake* issue)).

Based on the foregoing, it is respectfully RECOMMENDED:

The defendant's second amended motion to vacate, set aside, or correct sentence (doc. 126)  be DENIED.

At Pensacola, Florida, this 27th day of April, 2007.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).